Bety Javidzad (Cal. Bar. No. 240598)
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
E-Mail: bety.javidzad@hoganlovells.com

William L. Monts III (admitted *pro hac vice*)
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
E-Mail: william.monts@hoganlovells.com

*Attorneys for Defendants*
*Maritime International, Inc. and John Deats*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN RE MARINE PRODUCTS ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL ACTIONS | Master Consolidated Case File: CV-10-2319-GHW (FFMx)<br><br>**DEFENDANTS MARITIME INTERNATIONAL, INC. AND JOHN DEATS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFFS' CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**<br><br>**[Fed. R. Civ. P. 8, 9(b), 12(b)(6) and 12(f)]**<br><br>**Date: Nov. 22, 2010**<br>**Time: 8:30 a.m.**<br>**Courtroom: 10**<br>**Judge: Hon. George H. Wu** |

# TABLE OF CONTENTS


**Page**

I. INTRODUCTION ..... 1

II. THE COURT HAS ALREADY HELD THAT SUBSTANTIVELY IDENTICAL CONSPIRACY ALLEGATIONS AGAINST THE MARITIME DEFENDANTS FAIL TO STATE A CLAIM FOR RELIEF ..... 3

III. NONE OF PLAINTIFFS' ARGUMENTS IN SUPPORT OF THE CAC'S ALLEGATIONS AGAINST THE MARITIME DEFENDANTS SALVAGES THE COMPLAINT ..... 4

A. The E-Mail Messages on Which Plaintiffs Rely Do Not Plausibly Suggest That the Maritime Defendants Participated in Any Antitrust Conspiracy ..... 4

B. Allegations of Conspiracy Against Other Parties Do Not Plausibly Suggest That the Maritime Defendants Participated in Any Anticompetitive Agreement ..... 6

C. Assertions of Overlapping Conspiracies Add Nothing to the Allegations Against the Maritime Defendants ..... 9

D. Allegations of "Government Findings, Including Guilty Pleas" Related to Certain Defendants Add Nothing to the Allegations Against the Maritime Defendants ..... 10

E. The Alleged Susceptibility of the Marine Products Business to Collusion Has No Bearing on Plaintiffs' Failure to Plead the Participation of the Maritime Defendants in Any Unlawful Agreement ..... 11

F. Plaintiffs Have Failed to Allege Any Facts Plausibly Suggesting That the Maritime Defendants Participated in the Putative Marine Fenders Conspiracy ..... 12

IV. THE CAC FAILS TO ALLEGE THAT THE MARITIME DEFENDANTS FRAUDULENTLY CONCEALED ANY ANTICOMPETITIVE ACTIVITY ..... 12

V. PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED ..... 14

VI. CONCLUSION ..... 15

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Ashcroft v. Iqbal*,
___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) .......... 2, 4, 7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 554, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......... 4, 5, 6

*Conerly v. Westinghouse Elec. Corp.*,
623 F.2d 117 (9th Cir. 1980) .......... 13

*Guerrero v. Gates*,
442 F.3d 697 (9th Cir. 2006) .......... 13

*Hinds County v. Wachovia Bank N.A.*,
620 F. Supp. 2d 499 (S.D.N.Y. 2009) .......... 8

*In re Elevator Antitrust Litig.*,
502 F.3d 47 (2d Cir. 2007) (per curiam) .......... 11

*In re Hotel Tel. Charges*,
500 F.2d 86 (9th Cir. 1974) .......... 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
2010 WL 2629728 (N.D. Cal., June 29, 2010) .......... 8

*Kendall v. Visa, U.S.A., Inc.*
518 F.3d 1042 (9th Cir. 2008) .......... 6, 8

*Monsanto Co. v. Spray-Rite Serv. Co.*,
465 U.S. 752, 104 S. Ct. 1464, 79 L. Ed. 2d 775 (1984) .......... 6

*Moss v. U.S. Secret Serv.*,
572 F.3d 962 (9th Cir. 2009) .......... 4

*Santa Maria v. Pacific Bell*,
202 F.3d 1170 (9th Cir. 2000) .......... 13

*Schneider v. Cal. Dep't of Corrections*,
151 F.3d 1194 (9th Cir. 1998) .......... 5

*Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430 (6th Cir. 2008) ........ 8, 13

**STATUTES AND COURT RULES**

15 U.S.C. § 1 ........ 7

Fed. R. Civ. P. 9(b) ........ 3, 13

Defendants Maritime International, Inc. ("Maritime") and John Deats ("Deats") (collectively, the "Maritime Defendants") submit this reply memorandum in support of their motion to dismiss Plaintiffs' Consolidated Amended Class Action Complaint ("CAC").[1]

## I. INTRODUCTION

Plaintiffs' memorandum in opposition ("Opp. Mem.") to the Maritime Defendants' motion to dismiss makes four basic points concerning their conspiracy allegations in the CAC. First, Plaintiffs assert that because they have plausibly alleged a conspiracy involving foam-filled fenders and buoys against certain defendants, their conclusory assertions that the Maritime Defendants joined that conspiracy are sufficient to state a claim. Second, they contend that because they allege four "overlapping" conspiracies involving marine products, the putative existence of these multiple conspiracies somehow enhances the plausibility of their threadbare allegations against the Maritime Defendants even though they do not claim that the Maritime Defendants participated in two of the "overlapping" agreements and assert no substantive allegations against Maritime or Deats with respect to another. Third, they argue that the guilty pleas entered by other defendants somehow bolster their claims against the Maritime Defendants while conceding that the United States Government has brought no action of any sort against Maritime or Deats. Finally, they claim the marine products business generally is conducive to collusion. These arguments are meritless.

On September 16, two days after the Maritime Defendants filed their motion in this action, this Court dismissed substantively identical allegations against them

[1] The Maritime Defendants also join in the reply memorandum filed by Defendant Virginia Harbor Services in support of its Motion to (1) Dismiss All Claims of Galveston Wharves and RDA; (2) Clarify that Ace Marine is not Before the Court and to Strike All Allegations Pertaining to the First Claim for Relief; (3) Dismiss All Class Allegations of the Board of Commissioners of the Port of New Orleans; and (4) Dismiss the Third Claim for Relief.

in a *qui tam* action relating to the same alleged conspiracies asserted here.[2] This prior decision alone is sufficient for the Court to dismiss the CAC against the Maritime Defendants.

Furthermore, none of Plaintiffs' substantive arguments salvages their putative claims against the Maritime Defendants. Merely because Plaintiffs may have alleged a plausible conspiracy against other defendants says nothing about the plausibility of their allegations against the Maritime Defendants. The Supreme Court recently addressed this very point, holding that plaintiffs must plead sufficient allegations against each named defendant.[3] Plaintiffs' contrary contention is an attempt to bootstrap themselves into claims against the Maritime Defendants by virtue of their allegations against other parties.

Plaintiffs' second and third arguments repeat one another. Labeling various putative agreements as "overlapping" adds nothing to the allegations against the Maritime Defendants. The same is true with respect to the allegations that the United States Government has obtained guilty pleas against some defendants. Government actions against some defendants do not plausibly suggest that the Maritime Defendants participated in any anticompetitive activity. Finally, whether the marine products industry is "conducive to collusion" is irrelevant to the analysis of Plaintiffs' allegations against Maritime and Deats. Regardless of the putative characteristics of the industry, Plaintiffs must still allege sufficient allegations plausibly suggesting that Maritime and Deats participated in an unlawful agreement. That they have failed to do. The CAC states no antitrust claims against the Maritime Defendants and accordingly should be dismissed as to them.

As for the CAC's fraudulent concealment allegations, Plaintiffs ignore that

---

[2] *See* Minute Order in *United States ex rel. Farrow, et al. v. Trelleborg AB, et al.*, No. 05-381-GW (FFMx), Dkt. Entry 141, entered Sept. 16, 2010 (copy attached as Exhibit A).

[3] *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009).

Rule 9(b) applies to their claim. They also contend that the issue is inherently factual and therefore cannot be dismissed at the pleading stage. Yet Plaintiffs have not alleged a single fact plausibly suggesting that Maritime or Deats took any action concealing any cause of action from them. Instead, they cobble together a handful of generic allegations that unspecified "Defendants" engaged in certain conduct that supposedly had the effect of concealing their putative claims, or they rely on the same conduct underlying their putative antitrust claims.[4] Neither is sufficient. The fraudulent concealment allegations should be dismissed or stricken.

## II. THE COURT HAS ALREADY HELD THAT SUBSTANTIVELY IDENTICAL CONSPIRACY ALLEGATIONS AGAINST THE MARITIME DEFENDANTS FAIL TO STATE A CLAIM FOR RELIEF

On September 16, this Court dismissed antitrust conspiracy claims in a *qui tam* action against the Maritime Defendants that are virtually identical to those alleged in the CAC. *See* Exhibit A. In the *qui tam* case, the Court stated:

> Defendants [Maritime and Deats] are correct that the allegations contained in the [relevant] paragraphs consist either of nothing more than non-factual legal conclusions that the Court may disregard under *Iqbal* and *Twombly* or of factual allegations which do not, under the authorities, give rise to a plausible claim that either MII [Maritime] . . . or Deats were part of any antitrust conspiracy, or have nothing at all to do with Defendants.

Exhibit A at 4. The relevant paragraphs in the CAC concerning the Maritime Defendants, *see* CAC ¶¶ 110-15, appear to have been lifted almost verbatim from the dismissed *qui tam* complaint. In fact, the Plaintiffs admit that "[m]uch of the details [sic] come from a whistleblower (and relator in a related *qui tam* action) . . ."

---

4 Should the Court dismiss the conspiracy claims alleged against the Maritime Defendants, it need not reach this issue.

Opp. Mem. at 4. Those allegations are no less defective in this case. The Court's prior determination that the allegations of the *qui tam* complaint do not state a claim for relief against the Maritime Defendants is equally applicable to the CAC here.

## III. NONE OF PLAINTIFFS' ARGUMENTS IN SUPPORT OF THE CAC'S ALLEGATIONS AGAINST THE MARITIME DEFENDANTS SALVAGES THE COMPLAINT

Much of Plaintiffs' legal argument either (i) responds to arguments that the Maritime Defendants did not make or (ii) strains to deny that *Iqbal* and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007), actually mean what they say. The Maritime Defendants have never contended that *Twombly* and *Iqbal* create a heightened pleading standard or resulted in some "sea change in the law of pleadings." Opp. Mem. at 7 (quoting *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009)). Instead, the Maritime Defendants noted that *Twombly*, *Iqbal*, and their prodigy require that litigants plead sufficient facts plausibly suggesting a legal violation by the defendant in question. *See* Memorandum in Support of Maritime Defendants' Motion to Dismiss ("Def. Mem.") (Dkt. Entry 153) at 6.[5] As the Maritime Defendants noted, to the extent the CAC makes any allegations about them at all, it relies on "labels and conclusions, and a formulaic recitation of the elements of a cause of action." *See Twombly*, 550 U.S. at 555. That form of pleading is plainly insufficient.

### A. The E-Mail Messages on Which Plaintiffs Rely Do Not Plausibly Suggest That the Maritime Defendants Participated in Any Antitrust Conspiracy

Plaintiffs' argument that their few specific allegations against the Maritime Defendants state a claim for relief borders on the disingenuous. Plaintiffs claim that Defendant Deats made an "unabashed admission" that "'pricing' would be contingent on 'standardiz[ation]' among principal marine products manufacturers,

[5] Although Plaintiffs accuse the Maritime Defendants of misstating the law, Opp. Mem. at 2, they never identify any misstatement. This accusation appears to be a makeweight to mask the insufficiency of the allegations of the CAC against the Maritime Defendants under the prevailing standard.

whom he assumed would 'all ha[ve] talked about' the pricing of jobs and have 'told [one another] about' confidential information pertinent to certain projects." Opp. Mem. at 10. This argument rests on no actual allegation in the CAC. Rather, Plaintiffs have cobbled together snippets of three different e-mails sent by Defendant Deats over the span of 13 months to create the contention. *See* CAC ¶¶ 112-14.[6] Even the most generous reading of the allegations of the CAC does not yield any such assertion. Indeed, as the Maritime Defendants noted, none of the e-mails quoted in the CAC hint at the Maritime Defendants' participation in any antitrust conspiracy. Def. Mem. at 9. Having failed to allege *facts* that plausibly suggest that the Maritime Defendants entered a "preceding agreement," *Twombly*, 550 U.S. at 557, Plaintiffs resort to altering what they have pleaded and then impress upon the newly minted assertion a construction to fit their legal needs.

*Twombly* rejected this approach. There, plaintiffs alleged that defendants engaged in certain parallel behavior and then sought to impose upon that parallel behavior an assertion that it resulted from an unlawful conspiracy. *See id.* at 554-56. Plaintiffs' approach here is, if anything, even more suspect. They have not attempted to explain how the *facts* alleged in the CAC plausibly suggest that the Maritime Defendants engaged in any unlawful agreement. Rather, their Opposition Memorandum recasts the CAC to state something that they did not allege and then asks the Court to use that revision to foist the burdens of antitrust discovery on the Maritime Defendants. It is well-settled that a plaintiff may not amend its complaint in an opposition to a motion to dismiss. *See Schneider v. Cal. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) (new allegations contained in an opposition to a motion to dismiss are irrelevant). The Court should reject that effort here.

[6] In fact, Plaintiffs have only quoted snippets of e-mails sent by Defendant Deats in the CAC. It is more accurate to characterize their misleading argument as combining snippets of snippets of e-mails.

Plaintiffs also contend that the Maritime Defendants' reliance on *Monsanto Co. v. Spray-Rite Serv. Co.* 465 U.S. 752, 104 S. Ct. 1464, 79 L. Ed. 2d 775 (1984), is misplaced. *See* Opp. Mem. at 12 n.10. This is an odd argument; *Twombly* repeatedly cites *Monsanto* as establishing the governing standard for determining what conduct constitutes an unlawful conspiracy under section 1 of the Sherman Act. *See Twombly*, 550 U.S. at 554, 560, 561 n.7. In any event, Plaintiffs' contention that *Monsanto* stands for the proposition that communication between a manufacturer and distributor "*may* be lawful" but "does not indicate, nor could it, that pooling of information among 'competitor' manufacturers and distributors is lawful," Opp. Mem. at 12 n.10 (emphasis in original), is nonsensical for two reasons. First, the Maritime Defendants are not alleged to have pooled information with anyone. The only "pricing" information alleged to have been exchanged in the CAC is an e-mail from Deats (a customer) to Thermos (a supplier) stating what another company had *already* bid on a project. CAC ¶ 112. Plaintiffs' opposition does not explain how a mention of *past* bidding information plausibly suggests that the Maritime Defendants participated in any unlawful agreement. Second, Plaintiffs misunderstand the legal effect of the context in which the communication occurs. Because a manufacturer and distributor have legitimate reasons to communicate about prices, the allegation is as consistent with lawful behavior as it is with illegal conspiracy. Factual allegations that "could just as easily suggest rational, legal business behavior by the defendants as they could suggest an illegal conspiracy are insufficient to plead a violation of the antitrust laws." *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1049 (9th Cir. 2008). Plaintiffs' substantive allegations against the Maritime Defendants are nothing more than that. They should be dismissed.

### B. <u>Allegations of Conspiracy Against Other Parties Do Not Plausibly Suggest That the Maritime Defendants Participated in Any Anticompetitive Agreement</u>

Perhaps recognizing that the few allegations directly mentioning the

Maritime Defendants do not plausibly suggest that Maritime or Deats participated in any unlawful agreement, Plaintiffs argue that the Court must view them in the context of the CAC as a whole. Opp. Mem. at 8. The Maritime Defendants do not contend otherwise. But Plaintiffs' argument in support of that position is nothing more than an assertion that because Plaintiffs sufficiently pleaded a plausible conspiracy against certain defendants, their conclusory allegations that the Maritime Defendants participated in that agreement meets their pleading obligations. That contention has been squarely rejected.

In pleading an antitrust conspiracy, the factual allegations must satisfy two components of the cause of action. Overall, they must plausibly suggest that an unlawful agreement to restrain trade in violation of section 1 of the Sherman Act exists. 15 U.S.C. § 1. Second, the allegations must plausibly suggest that each Defendant *participated* in the unlawful agreement. *See In re Hotel Tel. Charges*, 500 F.2d 86, 89 (9th Cir. 1974) (defendant's "knowing participation" is a requisite element of proof of an antitrust conspiracy claim). The issue on this motion is not whether Plaintiffs plausibly alleged an antitrust conspiracy against *some* defendants, but whether the allegations relating to the Maritime Defendants plausibly allege *their* participation in such an agreement.

*Iqbal* illustrates this point. In that case, the Supreme Court noted that Iqbal's "account of his prison ordeal could, if proved, demonstrate unconstitutional conduct by some governmental actors." *Iqbal*, 129 S. Ct. at 1942. The issue, however, was not whether Iqbal had alleged unlawful activity by other defendants but whether his allegations were sufficient to state a claim that two specific defendants, the Attorney General and the Director of the FBI, participated in the unlawful activity. After reviewing the factual allegations – and sorting out those entitled to a presumption of truth from those that were mere legal conclusions – the Court held the complaint in question insufficient to state a claim for relief against the moving defendants.

Other courts have used the same approach and applied it to antitrust complaints. "Generic pleading, alleging misconduct against defendants *without specifics as to the role each played in the alleged conspiracy*, was specifically rejected by *Twombly*." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 436 (6th Cir. 2008) (emphasis added). Rather, a complaint must give *each defendant* adequate notice of its alleged misconduct. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2010 WL 2629728 at *7 (N.D. Cal., June 29, 2010) (copy attached as Exhibit B) (rejecting argument that generalized, unspecific allegations about "defendants" is sufficient to state a claim of antitrust conspiracy); *see also Hinds County v. Wachovia Bank N.A.*, 620 F. Supp. 2d 499, 512-13 (S.D.N.Y. 2009).

Here, the only allegations that purport to provide any "specifics as to the role,"[7] the Maritime Defendants played in the alleged agreement are the snippets of e-mail messages that neither hint at participation by Maritime or Deats in any agreement to fix prices or rig bids nor otherwise suggest any unlawful activity. *See supra* at 4-6; Exhibit A. The remaining allegations about the Maritime Defendants assert only that they "had knowledge of, joined and participated in the unlawful price-fixing, bid-rigging and market allocation scheme of UPC and Seaward (later VHS) described herein" and "coordinat[ed] their bids on the same projects in furtherance of the conspiracy." CAC ¶ 111. These averments are legal conclusions entitled to no presumption of truth. *Kendall*, 518 F.3d at 1048 (allegation that defendants "'knowingly, intentionally and actively participated in an individual capacity in the alleged scheme'" to fix prices is "nothing more than a conclusory statement"). Because the assertions against the Maritime Defendants, stripped of their legal conclusions, are insufficient to allege that Maritime or Deats participated in any unlawful agreement, the CAC should be dismissed.

---

[7] *Total Benefits*, 552 F.3d at 436.

### C. Assertions of Overlapping Conspiracies Add Nothing to the Allegations Against the Maritime Defendants

Plaintiffs make a half-hearted attempt to suggest that because the CAC purports to allege "three conspiracies within the marine products industry" and "draws upon a further conspiracy within the industry which involved marine hose," that fact somehow bolsters their allegations against the Maritime Defendants. Apparently, Plaintiffs believe that by labeling these putative agreements as "overlapping," they add some heft to an otherwise threadbare pleading.

This legerdemain finds no support in cases Plaintiffs cite. Moreover, Plaintffs' *ipse dixit* in the opposition memorandum aside, nothing in the CAC explains exactly how these putative agreements are "overlapping." No factual allegations assert a link between one conspiracy and another. Notably, Plaintiffs have named or attempted to name a different plaintiff on each of the alleged counts and do not suggest that the other named plaintiffs were harmed in any way by these allegedly "overlapping" agreements. Plaintiffs do not allege specific meetings or other communications between or among a broad group of defendants and relating to multiple products that might conceivably lend any credence to the characterization. Instead, Plaintiffs assert in paragraph 1 of the CAC that the purported agreements are "overlapping," "intertwined," and "related," but do not state how. The only other paragraph that the Maritime Defendants can find in the CAC attempting to assert some relationship between the supposed conspiracies is paragraph 158, which states that the foam-filled fenders and buoys conspiracy is "intertwined" with the marine fenders conspiracy because "many of the same Defendants were involved."

The absurdity of the argument is exposed when it is applied to the Maritime Defendants. The only substantive factual allegations made about the Maritime Defendants relate to the alleged foam-filled fenders and buoys conspiracy. CAC ¶¶ 110-15. Aside from a general allegation identifying the Maritime Defendants as

parties on the marine fenders count, *id*. ¶ 53, there is no substantive allegation relating to their conduct with respect to that product. In short, Plaintiffs would have this Court draw negative inferences against the Maritime Defendants merely because Plaintiffs named them in a complaint alleging three conspiracies even though there are no substantive allegations concerning Maritime or Deats on two of them. Again, Plaintiffs cite no authority for that remarkable proposition. The Court should reject it.

### D. Allegations of "Government Findings, Including Guilty Pleas" Related to Certain Defendants Add Nothing to the Allegations Against the Maritime Defendants

Plaintiffs also make much of the fact that certain defendants pleaded guilty to antitrust violations and assert that these pleas "establish that a conspiracy in that market existed, and at the very least imply that a conspiracy existed, thus supporting its plausibility." Opp. Mem. at 16. Again, Plaintiffs misapprehend the Maritime Defendants' argument. Even if the allegations of the CAC are sufficient to allege a conspiracy against some defendants, Plaintiffs must still make sufficient allegations plausibly suggesting that the Maritime Defendants *participated* in the purported agreement. None of the alleged guilty pleas establish or even relate to the activity of the Maritime Defendants and certainly do not plausibly suggest their *participation* in any unlawful activity. Moreover, Plaintiffs' insistence that the Court use the fact of guilty pleas by some defendants to bolster the CAC's putative claims against Maritime and Deats is blatantly inconsistent. They contend, on the one hand, that the allegations of guilty pleas must count against the Maritime Defendants, Opp. Mem. at 16-18, but insist that the fact that the Maritime Defendants have not been charged with any illegal activity or even subjected to

civil suit by the United States Government must be ignored. *Id*. at 17 n.12.[8]

This argument is simply a recast version of one rejected by the Second Circuit in *In re Elevator Antitrust Litig.*, 502 F.3d 47, 52 (2d Cir. 2007) (per curiam). The *Elevator* plaintiffs relied on alleged anticompetitive conduct in Europe to support their allegations of a global antitrust conspiracy. The Second Circuit held the allegations insufficient, noting that "[a]llegations of anticompetitive wrongdoing in Europe – absent any evidence of linkage between such foreign conduct and conduct here – is merely to suggest (in defendants' words) that 'if it happened there, it could have happened here.'" *Id.* If anything, Plaintiffs' contention in this case goes further than the argument rejected in *Elevator*. There, the plaintiffs sought to use anticompetitive conduct *by the same defendants* to support their claims of unlawful antitrust conspiracy. Here, Plaintiffs seek to use anticompetitive by some defendants to support claims of participation in a conspiracy by *separate and unrelated* defendants. The argument should be rejected.

### E. The Alleged Susceptibility of the Marine Products Business to Collusion Has No Bearing on Plaintiffs' Failure to Plead the Participation of the Maritime Defendants in Any Unlawful Agreement

Plaintiffs also contend that the CAC alleges a claim against the Maritime Defendants because they have asserted that the marine products business is conducive to collusion. Opp. Mem. at 19 (citing CAC ¶ 80). While it is debatable whether Plaintiffs' conclusory allegation on this point does anything to plausibly suggest any alleged agreement, it does not suggest that the Maritime Defendants participated in any unlawful conspiracy. As such, this argument does nothing to

---

[8] In this respect, it is worth noting that the United States specifically refused to intervene against the Maritime Defendants in the *qui tam* action on which the Plaintiffs base the CAC. *See* United States' Status Conference Statement in *United States ex rel. Farrow, et al. v. Trelleborg AB, et al.*, No. 05-381-GW (FFMx), Dkt. Entry 90, filed Apr. 2, 2010 (copy attached as Exhibit C).

bolster Plaintiffs' claims against Maritime and Deats.

### F. Plaintiffs Have Failed to Allege Any Facts Plausibly Suggesting That the Maritime Defendants Participated in the Putative Marine Fenders Conspiracy

Finally, nothing in Plaintiffs' Opposition Memorandum salvages their allegations against Maritime and Deats concerning the putative marine fenders conspiracy. Plaintiffs do not discuss the factual allegations asserted in the CAC plausibly suggesting that the Maritime Defendants participated in that agreement because there are none. *See* Def. Mem. at 12. Instead, the Opposition Memorandum goes to great lengths to explain the conspiracy without ever mentioning any actions taken by the Maritime Defendants. Plaintiffs' opposition asserts that defendants "Taylor and Bridgestone communicated for several years regarding Marine Fenders projects and that Yokohama acknowledged its working relationship with Taylor." Opp. Mem. at 14. The only connection of the Maritime Defendants to this putative conspiracy allegedly comes through defendant Fendercare, which according to Plaintiffs, sold foam-filled fenders and buoys – a wholly separate product – on behalf of Maritime. Because Fendercare had an exclusive right to represent Yokohama in the United States, *id*., Plaintiffs claim that "Maritime International, along with its owner, John Deats, likely also would have known and participated in this agreement." *Id.* at 15. This unadorned speculation borders on the frivolous. The Court should dismiss the marine fenders claim against the Maritime Defendants.

## IV. THE CAC FAILS TO ALLEGE THAT THE MARITIME DEFENDANTS FRAUDULENTLY CONCEALED ANY ANTICOMPETITIVE ACTIVITY

Plaintiffs' argument on their fraudulent concealment claim is also meritless. Plaintiffs initially suggest that the Court cannot decide the sufficiency of their fraudulent concealment allegations on a Rule 12(b)(6) motion because such claims are "inherently factual." *See* Opp. Mem. at 20-21. Yet nothing prohibits dismissal of fraudulent concealment claims at the pleading stage when the requisite

allegations are deficient or absent. *Guerrero v. Gates*, 442 F.3d 697, 706-07 (9th Cir. 2006) (affirming dismissal of fraudulent concealment claim on 12(b)(6) motion for failure to plead fraudulent behavior with particularity); *Conerly v. Westinghouse Elec. Corp.*, 623 F.2d 117, 120-21 (9th Cir. 1980) (affirming dismissal for failure to plead fraudulent concealment adequately).

Plaintiffs also ignore their pleading burden. Rule 9(b) governs claims that the statute of limitations is tolled by allegations of fraudulent concealment. *Conerly*, 623 F.2d at 120 ("the plaintiff must plead with particularity the facts which give rise to the claim of fraudulent concealment"). There are no factual allegations stating with any specificity what actions the Maritime Defendants took to conceal Plaintiffs' putative causes of action. Instead, the CAC contains only "[g]eneric pleading" of acts by unspecified "Defendants." *See Total Benefits*, 552 F. 2d at 436. These vague assertions do not give the Maritime Defendants notice of what actions they supposedly took that prevented Plaintiffs from asserting claims earlier than they did.

Plaintiffs also misapprehend the nature of fraudulent concealment claims. The alleged acts of concealment cited in their Opposition Memorandum are the same conduct on which they rest their underlying antitrust conspiracy claim. Opp. Mem. at 23 (citing paragraphs 111-15 of the CAC as the acts of affirmative concealment). But the acts that allegedly constitute the underlying cause of action may not be the basis of a fraudulent concealment claim. "Fraudulent concealment necessarily requires *active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed*, to prevent the plaintiff from suing in time." *Santa Maria v. Pacific Bell*, 202 F.3d 1170, 1177 (9th Cir. 2000) (emphasis added); *see also id.* at 1178 (allegation of failure to accommodate insufficiently distinct from underlying employment discrimination claim to support allegation of active conduct designed to conceal cause of action fraudulently).

Finally, Plaintiffs claim that they are excused from pleading with

particularity the acts they took to uncover any existing claims because they alleged lack of knowledge of any anticompetitive activities and had no reason to make further inquiry. Opp. Mem. at 21. This argument cannot be squared with their assertions of "overlapping" conspiracies and their contention that the existence of such intertwined agreements supports their claims against the Maritime Defendants. Plaintiffs concede that they knew of facts that would have put them on inquiry notice of anticompetitive activity concerning foam-filled fenders and buoys as of April 6, 2006. CAC ¶ 202. If the conspiracies are indeed "overlapping," largely because the same companies sell different products, as Plaintiffs contend, Opp. Mem. at 15; CAC ¶ 158, then the discovery of potentially anticompetitive activity in one sector of the marine products business should have excited inquiry about others. Plaintiffs should be able to assert what acts they thereafter took to ascertain the existence of any claim that they may have had against the Maritime Defendants. Their failure to include such allegations in their complaint also warrants dismissal of their fraudulent concealment claims.

## V. PLAINTIFFS' REQUEST FOR LEAVE TO AMEND SHOULD BE DENIED

Plaintiffs request leave to file an amended complaint should the Court grant the Maritime Defendants' motion to dismiss, claiming that they have "learned of additional facts" that supposedly support their claims against the Maritime Defendants. Opp. Mem. at 23. Plaintiffs do not describe what "additional facts" they may have learned or when they learned them. Plaintiffs have already amended their complaint and candidly acknowledge in their Opposition Memorandum that their allegations against the Maritime Defendants essentially have been copied from the *qui tam* action pending before this Court. Opp. Mem. at 4. They apparently have no independent knowledge of facts that would permit them to do so. Instead, they seem to be piggybacking on allegations asserted by others. The Maritime Defendants respectfully request that the Court deny this request.

## VI. CONCLUSION

For the foregoing reasons, all claims in the Consolidated Amended Class Action Complaint against Defendants Maritime International, Inc. and John Deats should be dismissed with prejudice. In addition, the allegations that the statute of limitations applicable to the putative conspiracy claims has been tolled by fraudulent concealment should be dismissed or stricken from the Consolidated Amended Class Action Complaint.

Respectfully submitted,

Dated: November 8, 2010

HOGAN LOVELLS US LLP

By: /s/ Bety Javidzad

Bety Javidzad
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 785-4600
Facsimile: (310) 785-4601
E-Mail: bety.javidzad@hoganlovells.com

William L. Monts III
HOGAN LOVELLS US LLP
555 Thirteenth Street, N.W.
Washington, D.C. 20004-1109
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
E-Mail: william.monts@hoganlovells.com

*Attorneys for Defendants Maritime International, Inc. and John Deats*